**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| LERCH BATES, INC., |
| Plaintiff, |
| v. |
| MICHAEL BLADES & ASSOCIATES, LTD., |
| Defendant. |

Civil Action No. 20-2223 (BAH)

Chief Judge Beryl A. Howell

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court is defendant Michael Blades & Associates, LTD's motion to set aside the entry of default in this copyright dispute with plaintiff Lerch Bates, Inc. ("Lerch Bates"), a competing business in providing elevator construction consulting services that formerly employed defendant's owner, Michael Blades. *See* Compl. ¶¶ 7, 17, ECF No. 1; Def.'s Reply Supp. Mot. to Set Aside Default ("Def.'s Reply") at 1, ECF. No. 21. Plaintiff brought this suit to recover damages for alleged copyright infringement and to enjoin defendant from further unauthorized use. Compl. ¶¶ 33, 36–37, 43–45. After considerable delay by defendant in defending this action, culminating in the entry of default, Clerk's Entry of Default, ECF No. 10, defendant has now stepped forward to litigate by moving to set aside the entry of default, Def.'s Mot. to Set Aside Default ("Def.'s Mot."), ECF No. 18. Plaintiff, too, has been slow in prosecuting this matter, failing to move for an entry of default until ordered to show cause why the matter should not be dismissed for failure to prosecute, and choosing to seek discovery on damages rather than pursue a default judgment on the issue of liability. As a result, this case has been pending for almost a year with minimal progress to resolution. For the reasons set forth below, despite defendant's troublingly dilatory conduct, this motion is granted.

1

I.      **BACKGROUND**

The relevant factual background and procedural history of this matter are described

below.

A.      **Factual Background**

Plaintiff owns U.S. Copyright Registration Number TX0008730900, entitled "Lerch

Bates Traction Elevator Manual and Specification" ("Manual"), Compl. ¶ 10; *id.*, Ex. 1,

Certificate of Registration ("Registration"), ECF No. 1-1, which covers their Elevator Design

Proposals for "electric traction elevators," Compl. ¶ 11.  The Manual is known as "Section

14210" and is a "detailed 49 page . . . instruction manual for generating Elevator Design

Proposals based on user input."  Compl. ¶ 13.  Plaintiff first published Section 14210 in 2009, *id*

¶ 12, and successfully registered the Manual with the United States Copyright Office on June 6,

2019, Registration at 1.

Plaintiff alleges that defendant makes unauthorized use of Section 14210 in its bid

proposals.  Compl. ¶ 24.  Specifically, defendant allegedly submitted two proposals in 2020: one

on February 28 for Monument Realty in Washington, D.C. ("Monument Bid"), *id.* ¶ 25, and one

on May 4 for Doubletree Largo in Maryland ("Largo Bid"), *id.* ¶ 26.  Both the Monument and

Largo Bids allegedly "contain infringing copies of the text and information found" in Section

14210, and plaintiff contends the "vast majority of elements in" three portions "of both bids are

either verbatim copies . . . or a near-exact copy."  *Id.* ¶ 27.

Plaintiff previously sent, in March 2018, a cease and desist notice to the defendant after

learning that defendant allegedly used Section 14210 without authorization in creating a bid

proposal.  *Id.* ¶ 16; Def.'s Mot., Ex. 2, Def.'s Verified Answer to Compl. ("Def.'s Proposed

Answer") ¶ 16, ECF No. 18-2.  Two years later, on February 4, 2020, plaintiff sent another cease

and desist letter to defendant but, after receiving no response, re-sent the same letter on March

20, 2020.  Compl. ¶ 22.  Michael Blades, defendant's president and former employee of plaintiff, *id.* ¶ 17, responded to the letter via email, indicating that he lacked legal counsel and that he responded to the matter about two years prior.  Pl.'s Opp'n Def.'s Mot. to Set Aside Default ("Pl.'s Opp'n") at 2, ECF No. 19; *id.*, Ex. 1, Email Correspondence (Dec. 8, 2020) ("First Email Correspondence") at 2, ECF No. 19-1.

### B.   Procedural Background

Plaintiff filed its Complaint on August 12, 2020, bringing two claims against defendant: one for directly infringing plaintiff's allegedly copyrighted work, pursuant to 17 U.S.C. §§ 106 and 501, *see* Compl. ¶ 33, and one for unauthorized removal of copyright management information, pursuant to 17 U.S.C. §§ 1202, 1203, *see id.* ¶¶ 43–45.  Defendant was served on October 12, 2020, Return of Serv. Aff., ECF. No. 8.  When defendant did not timely answer by November 2, 2020, *see* FED. R. CIV. P. 12(a)(1)(A)(i) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint[.]"), the Court—one month after the answer was due—directed plaintiff to show cause why the case should not be dismissed for failure to prosecute, *see* Min. Order (Dec. 2, 2020) (citing D.D.C. LCvR 83.23).  Faced with potential dismissal of the case, plaintiff moved for an entry of default, Pl.'s Req. for Entry of Default ("Pl.'s Default Req.") at 1, ECF No. 9, which the Clerk of Court entered against defendant on December 4, 2020, *see* Entry of Default.

Only after default had been entered did defendant contact plaintiff about the lawsuit.  On December 8, 2020, Michael Blades attempted to initiate settlement negotiations with plaintiff's counsel.  First Email Correspondence at 1.  Plaintiff's counsel replied to Michael Blades on December 22, 2020, and offered a solution: defendant would redesign its templates for bids using different language and arrangements, then provide the accounting information of all jobs for

which defendant entered bids using the allegedly copyrighted material.  *See* Pl.'s Opp'n, Ex. 2, Email Correspondence (Jan. 7, 2021) ("Second Email Correspondence") at 5, ECF No. 19-2.

The parties discussed plaintiff's offer via email over the following three weeks.  *See generally* Second Email Correspondence; *see* Pl.'s Opp'n, Ex. 3, Email Correspondence (Jan. 13, 2021) ("Third Email Correspondence"), ECF No. 19-3.  By January 13, 2021, however, the parties apparently reached an impasse: plaintiff's counsel explained that litigation would proceed if defendant did not provide the requested accounting information, and defendant rejected that offer.  Third Email Correspondence at 2–3.

At this point—over a month after the entry of default—plaintiff filed a motion for discovery on the issue of damages, Pl.'s Mot. for Discovery on the Limited Issue of Damages, ECF No. 13, which the Court granted, *see* Min. Order (Jan. 20, 2021).  Plaintiff was further ordered to provide status reports on its efforts to obtain discovery from defendant.  Min. Order (Mar. 30, 2021).

The parties did not communicate after Michael Blades' January 13, 2021, email until April 1, 2021, approximately one month after plaintiff issued its first set of discovery requests to defendant.  *See* Pl.'s Opp'n, Ex. 4, Email Correspondence (Apr. 1, 2021) ("Fourth Email Correspondence") at 1, ECF No. 19-4.  Michael Blades, on behalf of defendant, rejected plaintiff's discovery request in an April 1, 2021 email, maintaining that defendant would not "even consider responding" until plaintiff delivered a copy of the allegedly copyrighted material. *Id.*  Shortly thereafter, according to plaintiff's first status report, an attorney representing defendant contacted plaintiff's counsel and requested a thirty-day extension to respond to the discovery requests, to which plaintiff agreed.  Pl.'s Status Rep. (April 13, 2021) ("First Status Rep."), ECF. No. 14.  By the time plaintiff submitted its second status report to the Court one

month later, defendant had still not responded to plaintiff's discovery request but instead was in the process of changing counsel. Pl.'s Second Status Rep. (May 13, 2021) ("Second Status Rep."), ECF No. 15. Plaintiff's counsel attempted to contact defendant's new attorney to discuss the discovery issue but received no response. *Id.* Over five months after the entry of default, plaintiff requested that the Court issue subpoenas for documents and permit plaintiff to depose defendant. *Id.* Plaintiff was directed to file a motion requesting this relief since "[a] request for a court order must be made by motion," Min. Order (May 14, 2021) (quoting and citing FED. R. CIV. P. 7(b)(1)).

Before any such motion was filed, however, defendant's current counsel entered his appearance on May 19, 2021 and filed a motion to set aside default. That defense motion was stricken for failing to comply with the Local Rules. *See* Min. Order (May 20, 2021). Five days later, defendant filed the pending motion to set aside default, *see* Def.'s Mot., which is now ripe for resolution, *see* Pl.'s Opp'n; Def.'s Reply.[1]

## II.    LEGAL STANDARD

"[T]he Federal Rules of Civil Procedure provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect the "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'" *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Federal Rule of Civil Procedure 55(a) states, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a); *see* 10A CHARLES ALAN WRIGHT ET. AL.,

---

[1]      Discovery was stayed pending resolution of the pending motion. Min. Order (Jul. 14, 2021). In the interest of expediting proceedings and promoting the efficient adjudication of plaintiff's claims, that stay is now lifted.

FEDERAL PRACTICE AND PROCEDURE § 2682 (4th ed. 2018) ("When the prerequisites of Rule 55(a) are satisfied, an entry of default may be made by the clerk without any action being taken by the court . . . [as long as] the clerk [has] examine[d] the affidavits filed and [found] that they meet the requirements of Rule 55(a).").

Rule 55 further provides that a "court may set aside an entry of default for good cause." FED. R. CIV. P. 55(c).  The D.C. Circuit has outlined three factors, first articulated in *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372 (D.C. Cir. 1980), to consider in the exercise of discretion under Rule 55(c): "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious."  *Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011) (quoting *Keegel*, 627 F.2d at 373).  The three factors articulated in *Keegel* are not exclusive, however, as the "good cause" standard of Rule 55(c) "is designed to empower courts to consider the equities that specially arise in a given case."  *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 966 (D.C. Cir. 2016).  Thus, because "strong policies favor resolution of disputes on their merits," *Mohamad*, 643 F.3d at 606 (quoting *Jackson*, 636 F.2d at 836), and because all "doubts are resolved in favor of the party seeking relief" on motions to vacate an entry of default, *Jackson*, 636 F.2d at 836, Rule 55(c) uses a "lenient" standard, *Meehan v. Snow*, 652 F.2d 274, 276–77 (2d Cir. 1981) (noting "the standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)" (citing *Keegel*, 627 F.2d at 375 n.5)), which leaves the determination to the Court's discretion, *see Gilmore*, 843 F.3d at 965–66 (differentiating between FED. R. CIV. P. 55(c) and 60(b)).

## III.    DISCUSSION

Plaintiff failed to seek entry of default, until prompted by this Court's order to show cause why the entire lawsuit should not be dismissed for failure to prosecute, and then failed to move for default judgment until obtaining discovery from defendant for purposes of damages, even though such discovery could have been pursued after entry of default.  *See Buttnugget Publ'g v. Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 111 (N.D.N.Y. 2011) (granting motion for default judgment on the matter of liability, enjoining unauthorized performance of the copyrighted works, and contemplating a future damages hearing); FED. R. CIV. P. 69(a)(2).[2] Now, although this case has been pending on this Court's docket for almost one year, no meet and confer report has been filed by the parties, no scheduling order has been entered and no formal discovery is underway to move this case to resolution.  Instead, at this point, due to dilatory prosecution by plaintiff and egregiously disrespectful conduct by defendant in ignoring the pendency of the lawsuit, this Court is confronted with defendant's motion to vacate entry of default.  Although defendant's default was surely willful, the Court finds that the *Keegel* factors weigh in favor of setting aside the entry of default against defendant.  Accordingly, defendant's motion to vacate the entry of default will be granted.  Each of the *Keegel* factors are addressed *seriatim*.

### A.    Defendant's Default was Willful.

The first *Keegel* factor looks to whether the default was willful.  627 F.2d at 373. Supporting the claim that defendant's default was willful is the simple fact that over seven

---

[2]    Some cases within this Circuit refer to the necessity of independently determining damages before "entering a judgment on an unliquidated claim."  *Jackson*, 636 F.2d at 835; *see also Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded.").  This principle is best understood as referring to the entry of judgment on damages rather than on liability.

months lapsed between defendant receiving service of process, on October 12, 2020, and showing up to litigate the matter by filing a motion to set aside the entry of default, on May 24, 2021.

Defendant points to efforts to negotiate a settlement as an excuse for its default, stating that it was in "regular consultation with the Plaintiff" regarding possible resolution after the Complaint was served and did not retain counsel because it was relying on "past history of similar complaints . . . fully expecting the matter to be resolved through discussion . . . ." Def.'s Mot. ¶ 6.  In defendant's view, this excuse should be sufficient to find its default not willful, *id.,* but, notably, no legal support for that contention is cited.  Plaintiff posits that defendant did not default in reliance on settlement discussion, but instead "purposely chose to default."  Pl.'s Opp'n at 2.  After all, defendant did not contact plaintiff regarding the lawsuit until after default was entered, *id.*, about one month after defendant failed to appear, *see* FED. R. CIV. P. 12(a)(1)(A)(i).  Although conceding that defendant attempted to initiate settlement discussions with its December 8, 2020, email, plaintiff points out that those discussions "quickly reached an impasse" when defendant rejected plaintiff's offer on January 8, 2021.  Pl.'s Opp'n at 3.  After the parties' last email exchange on January 13, 2021, plaintiff did not hear from defendant again until three months later, after plaintiff served defendant with discovery requests.

Uncertainties around the willfulness of default are frequently resolved in the defaulting party's favor, even where that party's explanation had slim or no supporting evidence.  *See, e.g.*, *Capital Yacht Club v. Vessel Aviva*, 228 F.R.D. 389, 394 (D.D.C. 2005) (finding default not willful even though the defaulting party had "not produced any evidence corroborating" its explanation, leaving the court "with a doubt (albeit a very strong doubt)" about the defendant's willfulness).  Regardless of any attempt to negotiate a settlement outside of court, defendant's near-eight-month

delay in formally responding to the complaint in this case when defendant was fully aware of the lawsuit's pendency demonstrates that its default was willful.  *See Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126, 130 (D.D.C. 2010) (finding defendant's conduct "willful" due, in part, to it acknowledging the complaint was properly served and indicating the defendant did not respond because of a self-determination that it was not involved in the suit); *see also Afr. Growth Corp. v. Republic of Angola*, Case No. 17-cv-2469 (BAH), 2018 U.S. Dist. LEXIS 204152, at *15 (D.D.C. Dec. 3, 2018) (finding defendant's conduct "willful" due, in part, to the "simple fact" that "eight months lapsed between [defendant] receiving service of process . . . and showing up to litigate the matter, by filing a motion to set aside the entry of default").  Defendant's failure to timely participate in pending litigation against it, ignoring the deadlines set by the Federal Rules of Civil Procedure, shows disrespect for the Court and the legal system in which the Court operates, and results in delays in resolving cases to the detriment of the judicial system and other litigants. *See Pakter v. Janou Pakter, LLC*, Case No. 16-cv-4288 (PAE), 2018 U.S. Dist. LEXIS 56869, at *8 (S.D.N.Y. April 3, 2018) (noting that "allowing a case to languish for nearly nine months . . . is deeply disrespectful to the Court [and] opposing counsel").

Here, defendant was properly served on October 12, 2020, Return of Serv. Aff., and default was entered against it on December 4, 2020, pursuant to Rule 55(a), *see* FED. R. CIV. P. 55(a).  Defendant did not contact plaintiff until December 8, 2020, when it tried to initiate settlement negotiations.  First Email Correspondence at 1.  Defendant took no action to participate in litigation for six months between December 8, 2020—when it was plainly aware of its obligation to participate in litigation—and May 19, 2021, when it filed its first (now stricken) motion to vacate the default.  Defendant's delay was willful.

A finding of willful default, however, is not dispositive. Entry of default may be set aside even where a defendant defaulted willfully where other factors weigh in favor of granting vacatur. *See, e.g.*, *Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 81–82 (D.D.C. 2011) (vacating entry of default despite finding defendants' default to be willful where the Court was "convinced that [defendants] are truly committed to litigating this matter" and the other *Keegel* factors weighed in favor of vacatur); *Haskins*, 755 F. Supp. 2d at 130 (setting aside entry of default even though defendant's default was "at least to some degree[] willful").

### B.    Plaintiff Will Not Be Prejudiced by Setting Aside the Default

The second *Keegel* factor looks to whether setting aside the default will prejudice the plaintiff.  627 F.2d at 373.  Defendant claims that a set-aside would not be prejudicial because "simple delay," or making a plaintiff "prove its claims through litigation," is not "prejudice." Def.'s Mot. ¶ 7 (citing *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 419 n.6 (4th Cir. 2010)).  Defendant also contends that plaintiff has not been able to show any harm resulting from the alleged infringement, and maintains that "any delay in answering the Complaint has not affected Plaintiff's ability to litigate its case . . . ."  *Id.*  Plaintiff concedes that "delay" on its own is not "prejudice," Pl.'s Opp'n at 7 (citing *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 31 (D.D.C. 2003)), but contends that "forcing a party to expend further time and money to collect on a claim as to which there are no meritorious defenses unfairly prejudices plaintiff to some degree," *id.* at 7–8 (citing *Int'l Painters*, 288 F. Supp. 2d at 31).  Plaintiff further argues that it would also experience prejudice from granting the vacatur because it would "cause more unnecessary delay" *id.* (citing *Konoike Constr. Co. v. Ministry of Works, Tanzania*, Case No. 17-cv-1986 (RJL), 2019 WL 1082337, at *3 (D.D.C. Mar. 7, 2019)).

What plaintiff characterizes as "prejudice" is, at bottom, no different from a mere delay. Plaintiff understandably wishes to seek damages from defendant's allegedly unauthorized and continued use of plaintiff's copyrighted materials, but "prejudice" in this context requires showing some harm beyond mere delay in obtaining such relief.  *See Haskins*, 755 F. Supp. 2d at 130 (assessing whether plaintiff would be prejudiced by vacating the entry of default, stating "delay in and of itself does not constitute prejudice" (quoting *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 15 (1st Cir. 2003))).  Were plaintiff to prevail on the merits of its claim, damages would and could still be collected based on defendant's alleged infringement and defendant would still be enjoined from further use of plaintiff's Manual, *i.e.*, a mere delay in the remedy sought.

To the extent that the plaintiff claims prejudice because the delay would be "unnecessary" is not dispositive to this analysis.  Detriment in the sense that plaintiff will be required to establish the merits of its claim does not constitute prejudice for purposes of setting aside an entry of default.  *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998) ("As numerous decisions make clear, prejudice may not be found from . . . the fact that the defaulting party will be permitted to defend on the merits.").

The lack of prejudice to plaintiff favors grant of defendant's motion.

### C.    Defendant Asserts Meritorious Defenses to Plaintiff's Substantive Claims

The third *Keegel* factor looks to whether the defendant has asserted a "meritorious" defense.  627 F.2d at 373.  Importantly, "meritorious" in this context does not refer to the "likelihood of success."  *Id.* at 374.  Rather—as the parties agree, *see* Def.'s Mot. ¶ 8; Pl.'s Opp'n at 3 —defenses are "meritorious" for purposes of the motion to vacate default "if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense."  *Keegel*, 627 F.2d at 374 (quoting *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th

Cir. 1969)); *see also Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995) (noting that a party seeking to set aside an entry of default "is not required to prove a defense, but only to assert a defense that it may prove at trial").  Even "somewhat broad and conclusory . . . allegations [may] adequately meet the meritorious defense criterion for setting aside the default."  *Keegel*, 627 F.2d at 375.  Although a defendant must allege "specific facts beyond simple denials or conclusory statements," *Collura v. Ford*, Case No. 13-cv-4066 (GKP), 2016 U.S. Dist. LEXIS 13965, at *38 (E.D. Pa. Feb. 3, 2016) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)), the defenses "need only be 'litigable,' . . . or 'not facially unmeritorious,'" *id.* (first quoting *Chamberlain v. Giampapa*, 210 F3d 154, 164 (3d Cir. 2000); then quoting *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)) (some internal quotation marks omitted)).  The asserted defenses meet this low bar.

Defendant asserts defenses under 17 U.S.C. § 102(b), 17 U.S.C. § 103, and the scènes à faire doctrine.  *See* Def.'s Reply. 3–7; *see also* Def.'s Mot. ¶ 8.  First, defendant argues, pursuant to 17 U.S.C. § 102, that the Manual is an unprotectible document composed of "ideas, procedures, processes, systems, or methods of operation" that are not subject to protection under the statute.  Def.'s Reply at 3.  Under § 102(b), "copyright protection for an original work of authorship" does not extend "to any idea, procedure, process, system, [or] method of operation, . . . regardless of  the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  Defendant maintains that this is what plaintiff's manual is: "a malleable document designed to" generate "instructions, processes, and procedures" for a contractor to use when constructing and installing an elevator.  Def.'s Reply at 3.  Plaintiff responds that the Manual is an "interactive reference manual," which "may contain

nonprotectible elements," but that "established copyright law protects" a compilation of materials like instruction manuals and compilations.  Pl.'s Opp'n at 5.

Next, defendant argues, under 17 U.S.C. § 103 and the scènes à faire doctrine, that copyright protection for compilation works does not extend to preexisting materials.  Def.'s Reply at 3.  Under § 103, "[t]he copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b).  Similarly, copyright protection does not include "scènes à faire" material, *i.e.*, "elements that are 'dictated by external factors such as particular business practices,'" *Sturdza v. Gov't of the United Arab Emirates*, 281 F.3d 1287, 1295–96 (D.C. Cir. 2002) (quoting *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 401 (5th Cir. 2000)); *see also Computer Mgmt. Assistance Co.*, 220 F.3d at 401 (holding that the scènes à faire doctrine "excludes from copyright protection work serving functional purposes or work that is dictated by external factors," including, for example, "hardware standards and mechanical specifications, software standards and compatibility requirements, [and] computer manufacturer design standards" (citation omitted)).  Here, defendant maintains that the allegedly copied material is unprotectible according to § 103(b) and the scènes à faire doctrine because the material contains "boilerplate references to standards developed by national organizations such as the American National Standards Institute, . . . and other similar trade organizations," and further contends that the Court "cannot" rule on the validity of this defense without performing a "fact intensive analysis of the materials . . . [which] will demonstrate extensive incorporation of preexisting works."  Def.'s Reply at 3.

For a plaintiff to prevail on a copyright claim, it "must prove both ownership of a valid copyright and that the defendant copied original or 'protectible' aspects of the copyrighted work." *Sturdza*, 281 F.3d at 1295 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 361 (1991)).  While "facts" are not original for copyright purposes, *Feist Publ'ns*, 499 U.S. at 347, factual compilations, such as telephone books, may be sufficiently "original" to be protected, *see id.* at 348.  Once unprotectible elements (*i.e.*, ideas, facts, or scènes à faire material) are separated from the work at issue, the next step involves "determining whether the allegedly infringing work is 'substantially similar' to protectible elements" of the work.  *Sturdza*, 281 F.3d at 1296 (explaining that "'[s]ubstantial similarity' exists where 'the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value'" (quoting *Country Kids ' N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1996))).  Importantly, "substantial similarity is customarily an extremely close question of fact," to the extent that "summary judgment has traditionally been frowned upon in copyright litigation." *Id.* at 1296 (citing *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980)).

Here, defendant claims that the relevant documents include compilations of technical industry standards and other material particular to the construction of elevators, and plaintiff acknowledges that the Manual "may contain nonprotectible elements. *See* Pl.'s Opp'n at 5. Whether the materials composing the Manual are protectible or not, and whether the Manual itself is protectible or not, are questions that need not be resolved at this stage of the litigation to conclude that defendant raises meritorious defenses. *See Keegel*, 627 F.2d at 374.  Similarly, the Court need not engage in a dissection of the parties' disagreement over the application of scènes

à faire doctrine, *see* Pl.'s Opp'n at 5–6; Def.'s Reply at 4–6, because defendant has gone beyond the mere "hint" of a defense to contend the Manual's elements are unprotectible as a compilation of industry standards.  Defendant has therefore presented plausible defenses "which, if proven at trial, would constitute a complete defense," *Keegel*, 627 F.2d at 374, and the third *Keegel* factor weighs in defendant's favor to set aside the default.

* * *

Setting aside the Clerk's entry of default would not prejudice plaintiff, and defendant has presented meritorious defenses to plaintiff's claims within the meaning of *Keegel*.  Therefore, despite defendant's willful failure to timely respond to plaintiff's complaint, defendant has established good cause to set aside the entry of default.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, defendant's motion is granted, and the entry of default is vacated.  Defendant is directed to file an answer or otherwise respond to the complaint within ten days of issuance of this order.

Accordingly, it is hereby

**ORDERED** that defendant's Motion to Set Aside Default, ECF No. 18, is **GRANTED**; it is further

**ORDERED** that the Clerk's Entry of Default, ECF No. 10, is **VACATED**; it is further

**ORDERED** that defendant shall answer or otherwise respond to plaintiff's Complaint, ECF No. 1, by August 13, 2021; and it is further

**ORDERED** that the stay on discovery imposed on July 14, 2021, *see* Min. Order (Jul. 14, 2021), is lifted.

**SO ORDERED.**

Date:  August 3, 2021

_____
BERYL A. HOWELL
Chief Judge